IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2008 AUG 22 PM 2:26
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

FREE MARKET FOUNDATION, et al.,
          Plaintiffs,

-vs-                                              Case No. A-08-CA-116-SS

DAVID A. REISMAN, et al.,
          Defendants.

## ORDER

BE IT REMEMBERED on the 8th day of August 2008 the Court held a hearing in the above-styled cause, and the parties appeared through counsel. Before the Court were Plaintiffs' Motion for Summary Judgment [#51], Defendants' Response and Cross-Motion for Summary Judgment [#55], and Plaintiff's Reply and Response [#58]. Having considered these documents, the applicable law, the arguments of counsel at the hearing, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

Plaintiffs challenge the constitutionality of Texas Government Code Sections 302.17 and 302.019, two statutes that strictly limit the amount individuals and groups may contribute to influence the election of the Texas House Speaker. The history behind these statutes is set out in detail in this Court's Order of February 26, 2008 and is incorporated by reference here.

Texas Government Code Section 302.17, titled "Contributions and Loans from Organizations," states:

> (a) Except as provided by Subsection (b), a corporation, partnership, association, firm, union, foundation, committee, club, or other organization or group of persons may not contribute or lend or promise to contribute or lend money or other things of value to a speaker candidate or to any other person, directly or indirectly, to aid or defeat the election of a speaker candidate.
>
> (b) This section does not apply to a loan made in the due course of business to a speaker candidate for campaign purposes by a corporation that is legally engaged in the business of lending money and that has continuously conducted the business for more than one year before making the loan to the speaker candidate.

Texas Government Code Section 302.19, titled "Individual Contributions; Campaign Expenditures" sets out what an individual acting alone may do to influence the election for Speaker.

> (a) Except as provided by Section 302.017 [prohibiting organizational contributions as set out above] or 302.018 [prohibiting contributions from any elected officer or employee of the executive or judicial branches of state government], an individual other than the speaker candidate may contribute personal services and traveling expenses to aid or defeat a speaker candidate.
>
> (b) An individual other than the speaker candidate may expend a total of not more than $100 for the cost of correspondence to aid or defeat the election of a speaker candidate.
>
> (c) Except as provided by Subsections (a) and (b), all campaign expenditures must be made by the speaker candidate from campaign funds.

Plaintiffs assert these statutes, read together, have the effect of prohibiting any coordinated activity by a political group and prohibiting any independent expenditures to influence a Speaker election, while allowing unlimited individual contributions to a Speaker candidate's campaign. Plaintiffs argue these regulations impermissibly limit their rights under the First Amendment.

**Analysis**

**I. Summary Judgment Standard**

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding

summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). First, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

## II. First Amendment Analysis

The Supreme Court has established that campaign contribution limits "impinge on the protected freedoms of expression and association." *McConnell v. FEC*, 540 U.S. 93, 231 (2003) (citing *Buckley v. Valeo*, 424 U.S. 1, 20-22 (1976)). Contribution limits imposed on groups can be especially problematic when they "severely inhibit collective political activity by preventing [a group] from using contributions by small donors to provide meaningful assistance to any individual

candidate." *Randall v. Sorrell*, 126 S. Ct. 2479, 2497 (2006) (Breyer, J., plurality). Therefore, to pass constitutional muster, the Government must demonstrate that "a contribution limit involving 'significant interference' with associational rights . . . [is] 'closely drawn' to match a 'sufficiently important interest.'" *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 388 (2000) (quoting *Buckley*, 424 U.S. at 25).

The Supreme Court has "subjected restrictions on campaign expenditures to [even] closer scrutiny than limits on campaign contributions." *McConnell*, 540 U.S. at 135 (citing *FEC v. Beaumont*, 539 U.S. 146, 161–62 (2003); *Nixon*, 528 U.S. at 387-388; *Buckley*, 424 U.S. at 19). "Independent expenditures constitute expression 'at the core of our electoral process and of the First Amendment freedoms.'" *Fed. Election Com. v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 251 (1986) (quoting *Buckley*, 424 U.S., at 39). Accordingly, restrictions on independent expenditures that burden political speech must be narrowly tailored to support a "compelling state interest." *Id.*

Defendants concede the challenged statutes impose "significant interference" with group and individual political speech, but argue the regulations are narrowly tailored to advance a compelling government interest. Plaintiffs concede Defendants have identified a compelling state interest in preventing corruption or the appearance of corruption in the election of the House Speaker, but argue the challenged statutes are not appropriately tailored to address the problem of corruption.

According to Defendants, the challenged statutes are narrowly tailored because they only limit group contributions and individual expenditures intended "to aid or defeat the election of a speaker candidate." *See* Tex. Gov't Code §§ 302.019, 302.017. Defendants assert speech regarding the Speaker election that is addressed to the general public, rather than to the legislators who actually

vote for the Speaker, is not speech that could be intended to "aid or defeat" a speaker candidate, and therefore such public speech is not limited by the statute.

The Court finds such a construction strained, at best. The phrase "to aid or defeat the election of a speaker candidate" is not, on its face, a limiting clause. In fact, a literal reading of the statutes as written not only limits individual expenditures, but even a newspaper editorial, unsolicited by any political figure or group, that offers an opinion on who should be Speaker of the House would be in violation of the regulations: the editorial is a "thing of value" contributed through publication by a corporation in violation of Section 302.017, and the author certainly intends to "aid or defeat the election of a speaker candidate" by expressing his views in a public forum.

However, even if the limitation proposed by Defendants could be read into the phrase "to aid or defeat the election of a speaker candidate," the challenged statutes would still be overbroad. As Judge Yeakel noted in his Order of February 26, 2008,

> Defendants' argument that the 'internal' character of the Speaker election makes the restrictions appropriately narrow is unavailing; as Plaintiffs point out, the Speaker of the Texas House of Representatives is 'one of the most powerful and influential political figures in the state, vested with the responsibility of overseeing the course of lawmaking in every possible area of interest to any Texan.' Mot. Prel. Inj. at 1. The election of the Speaker is not, therefore, a matter of internal Housekeeping. It is an issue of great political importance and a legitimate subject of public debate.

*Id.* at 7. Even if the statutes limit only communications to legislators about the Speaker election, they remain a serious burden on a type of speech that is fundamentally "public" in character and therefore entitled full protection under the First Amendment.

Defendants argue the challenged statutes must be read in conjunction with Texas Government Code Chapter 305, which regulates the activities of lobbyists. According to Defendants, Chapters 302 and 305, when properly read together, impose nothing more than a

reasonable disclosure requirement for those wishing to influence the Speaker election, just as Texas lawfully requires of anyone "seeking to communicate directly with one or more members of the legislative or executive branch to influence legislation or administrative action." TEX. GOV'T CODE § 305.003.

Chapter 305 contains a registration requirement designed to provide transparency in the lobbying process, see TEX. GOV'T CODE §§ 305.003, 305.005. However, such registration costs $300 for anyone not employed by a 501(c)(3) or 501(c)(4) corporation. TEX. GOV'T CODE § 305.005. Moreover, Defendants can point to no specific language in the statute establishing that a group registered under § 305.005 is thereby authorized to contribute to a Speaker campaign in violation of § 302.017, or that registration under § 305.005 allows an "individual other than the speaker candidate" to make independent expenditures in violation of § 302.019. There is nothing in Chapter 305 that can fairly be read to excuse registered lobbyists from Chapter 302's limitations on contributions to a Speaker campaign by "a corporation, partnership, association, firm, union, foundation, committee, club, or other organization or group of persons," TEX. GOV'T CODE § 302.017, or independent expenditures over $100 by any "individual other than the speaker candidate." TEX. GOV'T CODE § 302.019. In other words, no group, whether registered as a lobbyist or not, can contribute anything of value to influence the speaker's election, and no one, whether registered as a lobbyist or not, can make independent expenditures (other than $100 for correspondence) to that end.

As Judge Yeakel noted in the February 26, 2008 Order, these restrictions run afoul of well-established Supreme Court precedent. Regarding Section 302.017, Judge Yeakel noted

> Section 302.017 categorically denies organizations and groups the ability to make both contributions and independent expenditures to influence the election for

> Speaker. The Supreme Court has "routinely struck down limitations on independent expenditures," *FEC v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 441 (2001) (collecting cases), and in cases where the Court has allowed a limit on campaign contributions to stand, it has relied in part on the fact that independent expenditures remained available as an alternative means of political expression. *Buckley*, 424 U.S. at 28. *See also McConnell*, 540 U.S. at 135-36; *Nixon*, 528 U.S. at 401 (Breyer, J., concurring) (upholding statute because it did not "prevent the contributor from using money (alone or with others) to pay for the expression of the same views in other ways.") This case law suggests it is highly unlikely that a complete ban on *both* campaign contributions *and* independent expenditures by groups would be constitutionally permissible.

*Id.* at 8. Section 302.019 fared no better:

> Section 302.019 forbids individuals from making any independent expenditures to influence the election for Speaker, with only two narrow exceptions: (1) up to $100 for correspondence, and (2) personal time and labor. . . . These limitations effectively "exclude all citizens . . . from any significant use of the most effective modes of communication." *Buckley*, 424 U.S. at 13, 19-20.
>
> Section 302.019 permits individuals to speak through Speaker candidates by contributing to their campaigns. Such "speech by proxy," however, "run[s] afoul of 'the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message.'" *FEC v. Wis. Right to Life, Inc.*, 127 S. Ct. 2652, 2671 n.9 (2007) (Roberts, C.J., plurality) (quoting *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*, 515 U.S. 557, 573 (1995)). Section 302.019 effectively requires individuals to associate themselves with one or more Speaker candidates if they want to speak about the election for Speaker. . . . [S]uch "forced associations that burden protected speech are impermissible." *Pacific Gas & Elec. Co. v. Public Util. Comm'n*, 475 U.S. 1, 12 (1986).

*Id.* at 9

Defendants have identified no limiting construction supported by the text of either statute that can avoid these unconstitutional results. Therefore, this Court has no choice but to find that Texas Government Code Sections 302.017 and 302.019 are unconstitutional.

**III. Injunctive Relief**

In addition to a declaration that Sections 302.017 and 302.019 are unconstitutional, Plaintiffs seek a permanent injunction prohibiting Defendants from seeking to enforce the challenged statutes. As this Court noted in its Order of June 11, 2008, Plaintiffs in this case have articulated an Article III controversy sufficient to warrant declaratory relief, *see Steffel v. Thompson*, 415 U.S. 452, 465–66 (1974); *see also Brister v. Faulkner*, 214 F.3d 675, 681 (5th Cir. Tex. 2000). Nevertheless, the Court found no Plaintiff has established any criminal prosecution is currently pending or contemplated. The Court further noted considerations of comity and federalism ordinarily counsel against issuing a permanent injunction against enforcement of state statutes: "[i]n most cases, a declaratory judgment that a statute is unconstitutional will be sufficient to allow the state enforcement agencies to modify their enforcement agendas appropriately." *Id.* (citing *Steffel*, 415 U.S. at 469).

On the record currently before this Court, Plaintiffs have not established a permanent injunction is necessary to protect their constitutional rights because they have established no likelihood that the State of Texas will attempt to enforce statutes that have been declared unconstitutional. Accordingly, the Court declines to issue injunctive relief.

## Conclusion

In accordance with the foregoing,

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment [#51] is GRANTED in PART.

The Court FINDS that Texas Government Code Sections 302.17 and 302.019 violate the First Amendment of the United States Constitution in that they are not narrowly tailored and therefore significantly chill core political speech protected by the First Amendment.

However, because Plaintiffs have not established any likelihood that the state will seek to enforce either statute in light of this declaration that the statutes are unconstitutional,

IT IS ORDERED that Plaintiffs' request for injunctive relief is DENIED.

IT IS FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment [#55] is DENIED.

IT IS FURTHER ORDERED that all other motions pending in the above-styled cause are DISMISSED as MOOT.

IT IS FINALLY ORDERED that, as Plaintiffs request attorneys' fees pursuant to 42 U.S.C. § 1988, the parties shall confer and attempt to reach agreement on a reasonable fee amount. Should no agreement be possible, Plaintiff shall file their application for attorneys' fees within **fourteen (14) days** of the entry of this Order and Defendants shall file their response thereto in accordance with the Local Rules.

SIGNED this the 21st day of August 2008.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE